UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI LYNN ROLLENHAGEN,

    Plaintiff,

v.

    Case No. 1:24-cv-181

COMMISSIONER OF SOCIAL
SECURITY,

    Hon. Paul L. Maloney

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

This matter was originally remanded on stipulation of the parties.[1] The present case involves a claim for disability for the period of September 14, 2019, through September 30, 2021. PageID.518. The ALJ explained the history of the case in pertinent part as follows:

> Pursuant to the District Court remand order, Appeals Council has directed the undersigned to: reevaluate the nature and severity of the claimant's depression consistent with 20 CFR 404.1520, and articulate the reasoning regarding this impairment in the hearing decision. In doing so, evaluate the claimant's depression in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in this provision.
>
> Reevaluate the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to the evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Rulings 85-15 and 96-8p).

---

[1] *See Terri Lynn Rollenhagen v. Commissioner of Social Security*, 1:22-cv-6 (Stipulation and Order of Remand, and, Judgment) (Oct. 12, 2022).

>Reconsider whether the claimant can perform her past relevant work in a manner consistent with 20 CFR 404.1565, and articulate that finding in the decision. . . .
>
>It is worthy to note the claimant filed a subsequent claim for Title II disability benefits on December 27, 2021. The State agency found the claimant disabled as of October 1, 2021. The Appeals Council neither affirms nor reopens the determination, which continues to be binding. . .
>
>The claimant is alleging disability since September 14, 2019. **As the claimant was found disabled as of October 1, 2021, the current period at issue in the decision is from September 14, 2019 to September 30, 2021**.

PageID.517-518 (emphasis added).

In addition to the depression identified in the remand order, plaintiff set out the following disabling conditions: ulcerative colitis; fibromyalgia; degenerative disc disease in the lumbar area; inflammatory arthritis; polymyalgia rheumatica; fall risk; short term memory loss – severe; chronic pain all over; and, unable to stand or sit more than 5 mins due to pain.  PageID.266. Plaintiff completed the 11th grade and had past relevant employment as a maintenance clerk, an administrative clerk, and an administrative clerk/procurement clerk. PageID.267, 527. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 8, 2023.  PageID.517-527.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.     LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by

substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

3

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity during the relevant time period (September 14, 2019, to September 30, 2021). PageID.520.  Plaintiff also met the insured status requirements of the Social Security Act during that time period.  *Id.*  At the second step, the ALJ

4

found that plaintiff had severe impairments of inflammatory arthritis, fibromyalgia, and inflammatory bowel disease. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.522.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, but no climbing ladders, rope, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extremes of cold, humidity, and hazards (e.g., operation of dangerous moving machines and unprotected heights).

PageID.523. The ALJ also found that plaintiff is capable of performing past relevant work as a maintenance clerk and administrative clerk. PageID.526. This work does not require the performance of work-related activities precluded by her residual functional capacity (RFC). *Id*. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of September 14, 2019, to September 30, 2021. PageID.527.

### III.  DISCUSSION

Plaintiff raised three general errors.[2]

**A. The ALJ's mental RFC determination is unsupported by substantial evidence as he failed to account for plaintiff's mental impairments.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to

---

[2] Plaintiff's brief does not include "ECF" or "PageID." headers. Plaintiff's counsel is directed to contact the Clerk's Office to determine why counsel's filings are not being properly entered into the Court record.

which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe" (*see* 20 C.F.R. § 404.1545) "based on all the relevant medical and other evidence in [the claimant's] case record" (20 C.F.R. § 404.1520(e)).

### 1. Non-severe impairments

As discussed, the ALJ found that plaintiff had severe impairments of inflammatory arthritis, fibromyalgia, and inflammatory bowel disease. In addition, the ALJ found that plaintiff's mental impairments are non-severe:

> The claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

PageID.520. *See* 20 C.F.R. § 404.1522(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

In reaching this determination, the ALJ reviewed plaintiff's medical records, stating in part that "[Claimant] does have behavioral notes through 2022 at 17F, but this is after the relevant period at issue [September 30, 2021]." PageID.521. The ALJ also reviewed the reports of the psychological consultants:

> In addition, George Starrett, Ed.D., and Shamika Hall, Ph.D., State agency psychological consultants, separately opined the claimant did not have a severe mental impairment (Ex 2A and 4A). The undersigned finds these assessments are well supported by the evidence relied upon in the summaries on initial and reconsideration. Furthermore, due to fact that DDS Psychological Consultants are specialists in Psychological Medicine and assessments are offered within that specialty. These assessments are also supported because DDS psychological consultants have specialized, programmatic knowledge of Social Security disability regulations and had access to the claimant's complete medical records as they

existed at the times of their reviews. Their findings are generally consistent with the substantial mental evidence, including the overall clinical findings and signs of the claimant's mental functioning as evidenced by mental status examinations and clinical observations made by providers; the claimant's courses of care and good responses to routine, conservative, and outpatient-only mental health treatment modalities; and the claimant's fairly broad range of daily and other activities. As such, the undersigned finds their expert opinions to be generally persuasive but has placed some of the limitations into more vocationally relevant terms (Ex. 4E/6-11; 8F/2-7; 10F/3; 11F/2-5; 12F/6; 18F/81-83; 24F/75-76, 81-83).

*Id.*

The ALJ also considered the four broad functional areas of for evaluating mental disorders in the Listing of Impairments (known as the "paragraph B" criteria). *Id*. The ALJ found that plaintiff has no limitations in the first area (understanding, remembering or applying information), the second area (interacting with others), and the fourth area (adapting or managing oneself). PageID.521-522. The ALJ did find that plaintiff has a mild limitation in the third area (concentrating, persisting, or maintaining pace) stating:

> The claimant watched movies, watched television, went fishing, drove, performed household chores, shopped in stores, prepared meals, and read. The consultative exam showed adequate concentration and focus with no memory deficits. She appeared to have fairly average intellectual functioning (Hearing Testimony & Ex. 4E/6-11; 8F/2-6).

PageID.521.   The ALJ concluded that:

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)).

PageID.522 (emphasis in original).

### 2.    Consideration of non-severe impairments in determining the RFC

Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from

7

at least one severe impairment, the ALJ "will consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity". 20 C.F.R. § 404.1545(e). *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018). Here, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are less than fully persuasive to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The undersigned has reviewed and analyzed all evidence of record, including medical records, whether or not they have been specifically discussed in the decision.

PageID.526.

The ALJ's reference to plaintiff's "medically determinable impairments" includes the non-severe impairment of anxiety and depression. Although the ALJ did not specifically discuss plaintiff's non-severe mental impairments at Step 4 of the decision, the record reflects that he considered that evidence. *See Weeks v. Commissioner of Social Security*, No. 1:16-cv-121, 2016 WL 6067957 at *6 (W.D. Mich. Oct. 17, 2016) ("Although the ALJ may not have specifically identified all non-severe impairments in his RFC discussion, there is no indication the ALJ did not consider them."). Based on this record, the ALJ evaluated plaintiff's RFC consistent with 20 C.F.R. § 404.1545(e). Accordingly, this claim of error should be denied.

> **B. The ALJ's determination is unsupported by substantial [sic] as without guidance from a professional medical opinion, improperly interpreted the raw medical data.**

Here, plaintiff contends that the ALJ improperly interpreted x-rays:

> On April 28, 2020 (PageID.453-455) and again on November 19, 2020 (PageID.497-499) treating medical source Dr. Holman provided disabling opinions. The ALJ in this case found Dr. Holman's opinions to be "unpersuasive."

8

> PageID.526. In coming to his conclusion, the ALJ stated that "the assessments of the State Agency medical consultants are much more consistent with the record." PageID.526. However, the State Agency medical consultants provided their opinions on May 29, 2020 (PageID.104-106), and July 16, 2020 (PageID.120-122). As such the State Agency medical consultants did not get to review the diagnostic images from March 18, 2021. See PageID.769-772. . . .
>
> Here, the March 18, 2021, x-ray of the cervical showed moderate mid cervical spondylosis and slight anterior wedge deformity of C7. PageID.769. An x-ray of the left shoulder showed mild degenerative changes. PageID.770. An x-ray of the pelvis showed mild degenerative changes of the right and left hip joints. PageID.771. An x-ray of the lumbar spine showed mild to moderate lumbar spondylosis. PageID.772. In his decision, the ALJ mentions these findings in two sentences stating "in early 2021, diagnostic testing showed mild degenerative changes in the bilateral hips and left shoulder. Other testing also revealed mild to moderate spondylosis in the lumbar spine and moderate cervical spondylosis." PageID.525. However, the only medical professional to actually review these findings was Dr. Holman. Thus, the ALJ's finding that the Sate [sic] Agency consultant's opinions were more consistent with the record is misguided.

Plaintiff's Brief at pp. 17-18.

The record reflects that Michael Schmidt, M.D. provided the following impressions for the x-rays: "Moderate mild cervical spondylosis. There is slight anterior wedge deformity of C7 which is probably old" (PageID.769); "Mild degenerative changes left shoulder" (PageID.770); "Mild degenerative changes right and left hip joints" (PageID.771); and, "Mild to moderate lumbar spondylosis, with no acute findings seen" (PageID.772).

The ALJ's decision included a summary of the relevant medical records:

> In addition, as to her pain complaints related to arthritis and fibromyalgia, primary care notes from late 2019 and into early 2020 revealed unremarkable physical examinations despite her reports of generalized achiness. Furthermore, she was prescribed prednisone based on her pain complaints, and her pain was described as "dramatically better" after taking this for only two weeks in February 2020. In addition, rheumatology notes since June 2020 documented some musculoskeletal tender points, as well as some tenderness of the spine, shoulders, hips, and left knee. One primary care note from August 2020 showed diffuse pain in the lower back, shoulder, legs, and knee. These findings are consistent with the claimant's complaints of chronic joint pain in multiple joints. However, the record through 2020 does not demonstrate she was as limited as alleged as these same notes regularly identified normal strength, sensation, and reflexes throughout.

9

> Moreover, the claimant had normal range of motion and did not need an assistive device in order to ambulate. She was noted to continue with follow up with rheumatology and had some improvement from pain symptoms with medical management and adjustments. She was noted to be prescribed Norco for pain management and stated that it works well (Ex. 4F/8; 5F/24, 26; 9F/13; 10F/3, 6; 11F/2-5; 12F/6, 10). <u>In addition, in early 2021, diagnostic testing showed mild degenerative changes in the bilateral hips and left shoulder. Other testing also revealed mild to moderate spondylosis in the lumbar spine and moderate cervical spondylosis.</u> In March 2021, a physical examination showed no acute distress, some reduced range of motion in the neck, shoulder, and back, but otherwise normal findings. Another exam in July 2021, showed some tenderness in the joints but otherwise no significant neurological or musculoskeletal deficits. Furthermore, physical examinations in September 2021 were within normal limits. Overall, the decisional residual functional capacity considered these impairments and findings in formulating the limitations (Ex. 18F/67-68, 81-83; 21F/20; 24F/81-81, 132, 137-139).

PageID.524-525 (emphasis added). The ALJ did not provide a citation for the "early 2021" diagnostic tests. These tests appear to be the x-rays set forth in Exhibit 13F dated March 18, 2021 (PageID.769-772).

"[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). However, the ALJ's decision does not need to mirror an RFC offered by a physician.

> [T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

*Id.* (internal quotation marks omitted). *See Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."); *Mokbel-Aljahmi v. Commissioner of Social Security*, 732 Fed. Appx. 395,

401 (6th Cir. 2018) (rejecting the argument that "a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC.").

While the ALJ determines the RFC, "an ALJ may not 'play doctor'." *Gibbens v. Commissioner of Social Security*, 659 Fed. Appx. 238, 246 (6th Cir. 2016). *See Brown v. Commissioner of Social Security*, 602 Fed. Appx. 328, 331 (6th Cir. 2015) ("an ALJ should resist the temptation to substitute the ALJ's own interpretation of medical records for that of a physician who has examined the records"); *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) ("While the ALJ may have prescribed different pain medication than that prescribed by Plaintiff's doctors, this decision is beyond the expertise of the ALJ"). However, as this Court has pointed out, "[a]n ALJ does not play doctor by evaluating the medical evidence because he is required to do so under the regulations." *Wright-Wenger v. Commissioner of Social Security*, No. 1:15-cv-753, 2016 WL 3922158 at *4 (W.D. Mich. July 21, 2016) (brackets and internal quotation marks omitted).

The issue before the Court is whether the ALJ "crossed the line" and acted like a doctor in evaluating plaintiff's x-rays by interpreting raw medical data. As discussed, Dr. Schmidt reviewed the x-rays and provided a narrative explaining his impressions. A doctor's narrative interpreting test results is an opinion upon which the ALJ can rely. *See, e.g., Sallaz v. Commissioner of Social Security*, No. 23-3825, 2024 WL 2955645 at *8 (6th Cir. June 12, 2024) ("[t]he ALJ did not attempt to interpret raw data as [plaintiff] contends; rather, she relied on the narrative summary prepared by the radiologist interpreting the MRI results"). Here, the ALJ did

11

not interpret raw medical data. Rather, he reported Dr. Schmidt's impressions of the x-rays. In addition, the ALJ made a connection between those impressions, the other medical evidence, and that limitations set forth in the RFC. *See Tucker*, 775 Fed. Appx. at 226. Accordingly, this claim of error should be denied.

> **3. The ALJ's determination is unsupported by substantial evidence as he failed to properly evaluate Ms. Rollenhagen's subjective testimony.**

Plaintiff contends that the ALJ failed to provide specific and accurate reasons for rejecting her subjective testimony. Plaintiff's Brief at p. 19. When a claimant alleges disabling symptoms, the ALJ follows a two-step process for evaluating those symptoms. "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms" and "[w]e evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 at *3-4 (Oct. 25, 2017). *See* 20 C.F.R. §§ 404.1529(c)(1) and (2).

The Commissioner also considers other evidence including:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ summarized plaintiff's complaints as follows:

> The claimant alleged physical impairments related to inflammatory arthritis, fibromyalgia, and inflammatory bowel disease. The claimant alleged to

> have chronic pain symptoms in multiple joints on a consistent basis. She alleged to be a fall risk and was unable to stand or sit more than 5 minutes due to pain. On the function report, she reported standing around 10 minutes, walking around a block, and sitting for hours with need to reposition. The claimant did not report use of an assistive device in the activities of daily living report. Furthermore, the claimant alleged to have gastrointestinal symptoms with frequent bathroom use per day due to bowel disease. She alleged to have accidents once or twice per week. The claimant alleged to have difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and using hands.

PageID.523-524.

Relying on statements made in Exhibit 4E/6-11 (Plaintiff's Function Report) (PageID.294-299) and Exhibit 8F/2-6 (Psychiatric/Psychological Medical Report) (PageID.465-469), the ALJ discounted those claims based on plaintiff's daily activities:

> Despite these allegations, the evidence indicates she maintains the ability to perform numerous tasks including living with family, attending to her personal care needs, preparing meals, performing household duties, watching TV, driving a car, talking on the phone, fishing, shopping in stores, paying bills, spending time with family, and taking care of others (Hearing Testimony & Ex. 4E/6-11; 8F/2-6). Overall, the undersigned finds that although the claimant may have limits in the type of work she can perform, the objective findings below do not support the claimant's allegations of an inability to do all work.

PageID.524. The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are less than fully persuasive to the extent they are inconsistent with the above residual functional capacity assessment" and that "[t]he persuasiveness of the claimant's allegations is weakened by inconsistencies between her allegations and the medical evidence of record." PageID.526.

Plaintiff contends that "[t]he ALJ in this case relied on a misrepresentation of Ms. Rollenhagen's daily activities in order to discredit her subjective statements" and that this error warrants a remand. Plaintiff's Brief at p.20. In this regard, plaintiff referred to her minimal daily activities which appear in the Psychiatric/Psychological Medical Report (Exhibit 8F):

13

> [A]t the consultative examination Ms. Rollenhagen relayed that she gets up around 7:00 am and takes her pills then waits an hour so she can lie back down. PageID.467. She usually does "nothing," and might do some laundry, a little cleaning, and watching some TV. PageID.467. She reported that her husband does all the cooking and shopping. PageID.467. She also reported that her sister comes over once a week or so to do all of the "heavy stuff." PageID.467. She also endorsed crying spells. PageID.467.

*Id*.

As discussed, the ALJ found that plaintiff engaged many more daily activities than reported to the psychologist. Having reviewed the record, the Court concludes that the ALJ's summary of plaintiff's daily activities is supported by substantial evidence. PageID.523-524. In this regard, while plaintiff referred to statements in Exhibit 8F, the ALJ referred to statements in the same exhibit as well as plaintiff's hearing testimony and Exhibits 4E. Accordingly, plaintiff's claim of error should be denied.

## IV.     RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  February 27, 2025                               /s/ Ray Kent
                                                        RAY KENT
                                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).